UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMBER CHAPMAN,<br><br>               Plaintiff,<br><br>v.<br><br>GENERAL BOARD OF PENSION AND HEALTH BENEFITS OF THE UNITED METHODIST CHURCH, INC.<br><br>               Defendant. | FILED: JUNE 8, 2009<br>09CV3474<br>JUDGE LEFKOW<br>MAGISTRATE JUDGE COLE<br>CH |

## COMPLAINT

Amber Chapman, by her attorney, Christina D. Hatzidakis of Maduff & Maduff, LLC, complains against Defendants as follows:

### Introduction

1. This is an employment discrimination and retaliation action brought by Plaintiff to redress violations of her rights under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*. Defendant discriminated against Plaintiff based on her disability of severe neuropathy by harassing Plaintiff and terminating her employment. Defendant violated the ADA by asking Plaintiff's doctor for information that was not job-related or consistent with business necessity. Defendant retaliated against Plaintiff by terminating her employment less than one week after she formally complained of discrimination. In this action, Plaintiff seeks back pay, compensatory damages, punitive damages, costs, and attorneys' fees.

### Parties

2. Plaintiff, Amber Chapman ("Plaintiff"), is a citizen of the state of Illinois, and she resides within the Northern District of Illinois.

1

3. Defendant, General Board of Pension and Health Benefits of the United Methodist Church, Inc. ("Defendant"), is an Illinois corporation with a registered agent in Chicago, IL.

4. Defendant is subject to the ADA because it employs more than fifteen people.

5. At all times relevant to this Complaint, Plaintiff was a qualified individual with a disability within the meaning of Title I of the ADA.

### Jurisdiction

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims involve federal questions arising under the Americans with Disabilities Act, 42 U.S.C. 12101 *et seq*.

7. All conditions precedent to suit have been met. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). This complaint is filed within ninety days of Plaintiff's receipt of her right to sue from the EEOC.

### Venue

8. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because Plaintiff's claims arose out of acts and transactions that occurred in this district.

### Facts

9. At the time of Defendant's acts of discrimination and retaliation, Plaintiff had a disability, severe neuropathy, that substantially limited her in one or more major life activities, including but not limited to walking, bending, lifting, and standing.

10. At the time of Defendant's acts of discrimination and retaliation, Plaintiff had a record of a disability, and that record was known to Defendant.

11. At the time of Defendant's acts of discrimination and retaliation, Defendant regarded Plaintiff as having a disability that substantially limited her in one or more major life activities.

12. Plaintiff began her employment with Defendant as a Training Specialist on or about February 17, 2003, and she continued this employment until her involuntary discharge on or about December 13, 2005.

13. At all times during her employment with Defendant, Plaintiff received satisfactory or better performance reviews.

14. In fact, on or about May 31, 2005, Defendant recognized Plaintiff as a "Star Performer," and Defendant gave Plaintiff a raise and promoted her to the position of Performance Analysis and Solutions Manager.

15. On or about August 15, 2005, Plaintiff informed Defendant that she needed to take a short term disability leave due to her medical condition.

16. On or about August 15, 2005, Plaintiff provided information from her doctor substantiating her need for the disability leave.

17. Plaintiff took an approved disability leave, beginning on or about August 15, 2005, and she returned to work from this leave on or about November 2, 2005.

18. On or about August 24, 2005, Defendant sent Plaintiff a letter confirming that Plaintiff could take the disability leave.

19. While on leave, Plaintiff's supervisor, Gertrude Livernois, called Plaintiff at home and told her not to return to work.

20. On information and belief, Ms. Livernois strategized with Plaintiff's coworker regarding how she could terminate Plaintiff's employment.

21. Ms. Livernois decided to frame Plaintiff's termination as a "position elimination."

22. On or about October 17, 2005, Plaintiff phoned Ms. Livernois to inform her that she would return to work part time.

23. On or about November 2, 2005, Plaintiff returned to work part time.

24. On or about November 3, 2005, Plaintiff provided Defendant with documentation from her doctor stating that she had a limited ability to bend, lift, and stand.

25. After she returned to work, Ms. Livernois mistreated Plaintiff by taking away her work, ignoring her, refusing to set goals for her.

26. Ms. Livernois told Plaintiff that she looked sick and gaunt, and that she should take long term disability leave.

27. Ms. Livernois told Plaintiff that other staff members would handle Plaintiff's job of facilitating meetings because she did not think Plaintiff would be able to walk around well enough.

28. On or about November 9, 2005, Ms. Livernois called Plaintiff's doctor and stated that she was concerned about Plaintiff's health and ability to work because Plaintiff walked with a cane and appeared to be in pain.

29. Although driving is not a job-related function, Ms. Livernois asked Plaintiff's doctor about Plaintiff's ability to drive.

30. On or about November 10, 2005 and November 17, 2005, Plaintiff notified Defendant that she was being subjected to discriminatory treatment.

31. During the week of December 5, 2005, Plaintiff complained of discrimination to Marlene Igel, Associate General Counsel for Defendant.

32. On or about December 13, 2005, Defendant informed Plaintiff that it was terminating her employment.

## Count I- Discrimination in
## Violation of the Americans with Disabilities Act

33. Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 through 32.

34. The ADA prohibits discrimination by an employer against a qualified individual with a disability regarding any terms and conditions of employment, including discharge. 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.4.

35. At the time of Defendant's discriminatory and retaliatory acts, Plaintiff was a qualified individual with a disability because she had the skill, experience, and expertise for the position she held at Defendants, and she was able to perform the essential functions of her position with or without a reasonable accommodation.

36. Based on the foregoing facts, Defendant discriminated against Plaintiff in violation of the ADA when it treated Plaintiff differently after learning of her disability and when it terminated her employment.

37. The above described unlawful employment practices were intentional, and Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights.

38. As a result of Defendant's unlawful acts, Plaintiff has been injured. Such injuries include, but are not limited to, lost pay, lost benefits, pecuniary losses, mental anguish, and pain and suffering.

### Count II- Violation of the Americans with Disabilities Act

39. Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 through 32.

40. The ADA prohibits an employer from making any medical inquiries about an employee, unless the inquiry is job-related and consistent with business necessity. 42 U.S.C. § 12112(d)(4)(A); 29 C.F.R. § 1630.13.

41. Defendant discriminated against Plaintiff in violation of the ADA when it asked Plaintiff's doctor for information that was not job-related or required by business necessity.

42. The above described unlawful employment practice was intentional, and Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights.

43. As a result of Defendant's unlawful act, Plaintiff has been injured. Such injuries include, but are not limited to mental anguish and pain and suffering.

### Count III- Retaliation in Violation of the Americans with Disabilities Act

44. Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 through 32.

45. The ADA prohibits retaliation by an employer against any individual because that individual has opposed unlawful discrimination. 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.12.

46. Based on the foregoing facts, Defendant retaliated against Plaintiff in violation of the ADA when it terminated Plaintiff's employment after she complained of discrimination.

47. The above described unlawful employment practice was intentional, and Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights.

48. As a result of Defendant's unlawful act, Plaintiff has been injured. Such injuries include, but are not limited to, lost pay, lost benefits, pecuniary losses, mental anguish, and pain and suffering.

WHEREFORE, Plaintiff Amber Chapman, requests that this Court award Plaintiff back pay with interest; award Plaintiff compensatory and punitive damages; award Plaintiff costs, expenses, expert witness fees, and reasonable attorneys' fees; and grant Plaintiff such additional relief as this Court deems just and proper.

                                                Respectfully Submitted,

                                                /S/CHRISTINA D. HATZIDAKIS
                                                Attorney for Plaintiff

Christina D. Hatzidakis
Atty No. 06291617
Maduff & Maduff LLC
205 North Michigan Ave.
Suite 2050
Chicago, IL 60601
(312) 276-9000