IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMBER CHAPMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 09 C 3474 |
| v. ) | |
| ) | Judge Lefkow |
| GENERAL BOARD OF PENSION AND ) | |
| HEALTH BENEFITS OF THE UNITED ) | Magistrate Judge Cole |
| METHODIST CHURCH, INC. ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Amber Chapman has filed a Motion for Sanctions, Attorney's Fees and Costs, requesting that the court issue punitive sanctions against the defendant for non-compliance in discovery, in addition to awarding her costs associated with her filing a Motion for Leave to File an Amended Complaint and an Amended Motion for Leave to Amend. The matter is here pursuant to Judge Lefkow's referral. *See* 28 U.S.C. §636(b)(1)(A); Rule 72(a), Federal Rules of Civil Procedure; Local Rule 72.1.

### INTRODUCTION

Ms. Chapman is suing her former employer, the General Board of Pension and Health Benefits of the United Methodist Church, Inc., for violations of the Americans with Disabilities Act. She alleges that, among other things, the General Board eliminated her position because of her disability and retaliated against for her lodging an internal complaint of discrimination. In October 2009, Ms. Chapman served her first set of written discovery requests, seeking all "documents" relating to the elimination of her position and to any restructuring of the General Board's T & D

department. (*See Defendant's Response in Opposition to Plaintiff's Motion for Sanctions and Attorney Fees and Costs*, Ex. A.). The request did not specify production in digital form or define the word "documents" to require production of such information. In early December 2009, the General Board responded by producing hundreds of documents in hard copy form, including the following documents, which are now at issue in Plaintiff's Motion for Sanctions:

> (1) a memorandum dated November 18, 2005, prepared by Gertrude Livernois, the General Board's Managing Director of Human Resources, explaining the business reasons for eliminating Chapman's position;
> 
> (2) a memorandum dated December 12, 2005, prepared by Marlene Igel, the General Board's Associate General Counsel, detailing the factual findings from her investigation of Plaintiff's December 5, 2005 internal discrimination complaint; and
> 
> (3) all of Ms. Chapman's written performance evaluations.

Ms. Chapman's attorneys did not object to the form in which the General Board produced the documents, and the Motion for Sanctions makes no reference to these initial discovery requests.

In February 2010, Ms. Chapman obtained new counsel. Apparently dissatisfied with the form of the original requests filed by her predecessor, she served on the General Board a Supplemental Request to Produce, seeking, among other things, "all documents generated by Defendant's Human Resources Department on Defendant's computers previously produced during discovery in their native format including previous drafts and metadata including…the Memorandum dated December 12, 2005, the Memorandum dated November 18, 2005, [and] any and all performance reviews of Amber Chapman…." (*Plaintiff's Motion for Sanctions* ¶ 1).[1] Although Ms.

---

[1] "Native format" is the default format of a file, or the form in which it was created on a particular software program. For example, documents created in Microsoft Word will be generated in the default native format
(continued...)

2

Chapman was already in possession of hard copies of the November 18 memorandum, December 12 memorandum, and the performance reviews, the General Board nevertheless began a search for the requested electronic versions. After inspecting accessible computer files and internal emails, the General Board reported that it was unable to locate the documents in their electronic form and responded to Ms. Chapman's request by stating that no responsive documents existed.

On April 7, the parties held the obligatory discovery conference regarding the location and production of the metadata from the November 18 memorandum and the December 12 memorandum.[2] The General Board suggested coordinating a meeting between the parties' IT experts, and Ms. Chapman's counsel agreed to discuss this request with her client. Also on April 7, Mr. Chad Moeller, one of the General Board's attorneys, and Ms. Igel spoke with the General Board's IT department about the possibility of locating the requested documents in their native form with metadata. The IT department informed Mr. Moeller and Ms. Igel that producing the electronic versions would be potentially difficult because of the large amount of backup data stored each month across the General Board's approximately 100 computer servers. (*See Defendant's Response in*

---

[1](...continued)
".doc". Likewise, a file created in Microsoft Excel will be in ".xls" format. Metadata has been described as "information describing the history, tracking, or management of an electronic document." *Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 646 (D. Kan. 2005). Metadata typically includes information such as the author of the document, the date the document was created and last modified, additions and deleted items in the document, and file permissions (*e.g.* who can read the data, who can write to it, who can run it). *Autotech Technologies Ltd. Partnership v. AutomationDirect.com, Inc.*, 248 F.R.D. 556, 559 (N.D. Ill. 2008). An electronic document in native format will generally contain the metadata for that document. *Lorraine v. Markel American Insurance. Co.*, 241 F.R.D. 534, 547 (D. Md. 2007).

[2] Fed. R. Civ. P. 37(a)(1) provides that the parties must certify in writing that they have conferred or attempted to confer in order to resolve discovery issues prior to seeking a court order. Local Rule 37.2 provides that a court shall not hear any motions for discovery and production of documents under Rules 26 through 37 of the Federal Rules of Civil Procedure unless the motion includes a certification that the parties have met in person or by phone and have attempted to resolve their dispute and details those efforts.

*Opposition to Plaintiff's Motion for Sanctions*, Ex. D.) In addition, its recovery was problematic since the documents sought were more than four years old, and, since 2005, the General Board had changed and/or upgraded its operating and email systems on several occasions. (*Id.*, Marlene J. Igel Aff. ¶ 5).

Despite this, the General Board thought – incorrectly as it turned out – it had located electronic versions of the November 18 memorandum and December 12 memorandum later in the afternoon of April 7. On April 12, Mr. Moeller sent a letter to Ms. Chapman's counsel, stating that metadata from electronic versions of the November 18 and December 12 memoranda had been located and would be produced shortly. (*See Defendant's Response in Opposition to Plaintiff's Motion for Sanctions*, Ex. G). In fact, the metadata was for one of the November 28 memoranda. The General Board produced screenshots of this metadata on April 15. The following day, Ms. Chapman's counsel mailed a response to Mr. Moeller, stating that the screenshots were "illegible," and that screenshots of the documents in their native format were unacceptable.

On April 28, Ms. Livernois informed Mr. Moeller and Ms. Igel that she had just discovered two additional memoranda, both dated November 28, 2005, while cleaning up her computer files in preparation for her upcoming retirement. Apparently, the November 28 memoranda were not found in a dedicated computer file, but were instead "floating" on Ms. Livernois' hard drive. (Igel Aff. ¶ 6). Mr. Moeller and Ms. Igel state in their sworn declarations that neither was previously aware of the existence of the November 28 memoranda. (*See Defendant's Response in Opposition to Plaintiff's Motion for Sanctions*, Ex. D, E).

The General Board produced hard copies of the November 28 memoranda to Ms. Chapman on the morning of Ms. Livernois' deposition on April 29. By this time, the plaintiff had been

4


provided with the screenshots of the metadata of what the Board's counsel thought were the metadata of the November 18 memorandum. Ms. Chapman's counsel was able to question Ms. Livernois about both the November 18 memorandum and the November 28 memoranda during her deposition on April 29. (*See Reply*, Ex. F at 2, reflecting that the November 28 memorandum was Ex. 33 and the November 18 memorandum was Ex. 34). The next day, however, at the deposition of Ms. Igel, Mr. Moeller pointed out that the metadata it produced on April 15 was from the wrong documents, and he so informed plaintiff's counsel. When Ms. Livernois was redeposed on June 14 where she testified that the metadata (actually the screenshots) was from the November 28 memoranda, not the November 18 memorandum, as had been erroneously thought. The renewed deposition lasted all of 19 minutes. (*Defendant's Response* at 8, n.5).

On May 3, the parties held another Rule 37 conference to discuss the location of the electronic versions of the November 18 memorandum, the December 12 memorandum and Ms. Chapman's performance reviews, as well as production of the actual metadata from the November 28 memoranda. Mr. Moeller emailed Ms. Chapman's counsel later that day to confirm that the General Board would produce the November 28 metadata, and that he would continue to search for the electronic versions of the November 18 and December 12 memoranda, as well as the performance evaluations.

On May 4, Mr. Moeller located the electronic version of the November 18 memorandum in an archived email from Ms. Igel dated March 3, 2006. (*See* Moeller Aff.). The General Board was also able to locate electronic versions of Ms. Chapman's performance evaluations. The following day, the General Board produced screen shots of the metadata from the November 18 memorandum and the November 28 memoranda. Mr. Moeller then transferred the electronic versions of the

November 18 memorandum, the November 28 memoranda and the performance evaluations onto a CD which he sent to Ms. Chapman's counsel by messenger service on May 7. (*See* Moeller Aff.). To clarify, by May 7, Ms. Chapman was in possession of: (a) hard copies of the November 18 memorandum, the December 12 memorandum, and her performance evaluations; (b) hard copies of the November 28 memoranda; c) accurate metadata from the November 18 and November 28 memoranda; and (d) the electronic versions of the November 18 and November 28 memoranda, as well as her performance evaluations.

Nonetheless, that same day, Ms. Chapman filed a Motion for Leave to File First Amended Complaint, seeking to add a Count for intentional spoliation of evidence. [53]. Count IV alleged that the General Board had "intentionally destroyed relevant evidence such as the electronic versions of original [the November 18] memorandum recommending Plaintiff's termination, all handwritten notes regarding Defendant's alleged investigation into Plaintiff's complaints of discrimination, all electronic versions of Plaintiff's performance reviews, and intentionally modified various other internal memoranda prior to disclosing it [sic] to counsel for Plaintiff." [53, Ex. 1, ¶51].

Upon receipt of the CD on May 7, Ms. Chapman's counsel emailed Mr. Moeller to inform him that she would "review the information and take appropriate action regarding....[the] Motion for Leave to Amend." (*Defendant's Response in Opposition to Plaintiff's Motion for Sanctions*, Ex. N). On May 12, Ms. Chapman filed her Amended Motion To Amend, removing reference to the "destruction" of the electronic versions of the November 18 memorandum and her performance evaluations. *Id.*

On May 18, the General Board located the electronic version of the December 12 memorandum embedded in an email to Ms. Igel from Karen Flammond, a former General Board

6

employee. The memorandum was "atypical" because it was not apparently saved on the General Board's primary server or on Ms. Igel's hard drive. (*See* Igel Aff.). Ms. Igel found the memorandum by searching through all archived emails dating back to 2005 which she thought might have related to Ms. Chapman. *Id.* On May 19, the General Board produced a second CD containing the electronic version of the December 12 memorandum. On May 26, Ms. Chapman filed both her Second Amended Motion to Amend [62], as well as the Motion for Sanctions [61] which is the subject of this present dispute.

On June 9, Ms. Chapman filed her First Amended Complaint, Count IV of which charged the Board with "Intentional Spoliation of Evidence." Count IV alleged that although the Board was aware of a potential civil action by the Plaintiff against it, the Board "intentionally destroyed relevant evidence and intentionally modified various other internal documents relevant to this case," and that it did so "solely for the purpose of thwarting Plaintiff's ability to prove her case." The allegedly destroyed evidence was neither enumerated nor generally described in this version of Count IV.[3]

The charges could scarcely be more serious, for "[n]o fraud is more odious than an attempt to subvert the administration of justice," *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S.

---

[3] The doctrine of spoliation is one of the most enduring principles of the common law:

> It has always been understood-the inference, indeed, is one of the simplest in human experience-that a party's falsehood or other fraud in the preparation and presentation of his cause, his fabrication or suppression of evidence by bribery or spoliation, and all similar conduct is receivable against him as an indication of his consciousness that this case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit. The inference thus does not necessarily apply to any specific fact in the cause, but operates, indefinitely though strongly, against the whole mass of alleged facts constituting his cause.

2 J. Wigmore, Evidence § 278 at 133 (3d Ed.1940).

238, 251. (1944)(Roberts, J., dissenting), and that is precisely what Count IV, at bottom, charges. The Motion for Sanctions does not allege spoliation, but rather seeks attorney's fees in connection with what it characterizes as a "flagrant violation of both the letter and the spirit of Discovery rules." (Motion for Sanctions ¶ 12). The Reply Brief accuses the defendant and its lawyers of "gamesmanship, bad faith, and sharp practices." (*Reply* at 1). Of course, alarms are not arguments. "A siren turns more heads than a birdsong does... and that is as it should be, provided the danger is real." Charles Kuralt, American Moments, 11 (1998). The trouble is that all too often-the danger is illusory or exaggerated. That is the case here.

## ANALYSIS

In a passing reference to Rule 37 of the Federal Rules of Civil Procedure – the Motion does not specify the section on which it is based – Ms. Chapman asks that sanctions be imposed on the General Board for its alleged refusal to provide information to her in digital format until effectively required to do so by virtue of her motion to amend the complaint to add a count for spoliation. While Rule 37 is essentially a "loser pays" provision, *Rickels v. City of South Bend, Indiana*, 33 F.3d 785, 786-87 (7th Cir. 1994), a movant must show its entitlement to the discovery it claims and unjustified conduct by one's opponent that causes harm. If the court finds that the party's conduct was not substantially justified, it has broad discretion in issuing sanctions, *Kunz v. DeFelice*, 538 F.3d 667 (7th Cir. 2008), including ordering payment of reasonable attorney's fees.

At bottom, Rule 37's purpose is not merely to compensate the aggrieved party, but to discourage future misconduct. "General deterrence, rather than mere remediation of the particular parties' conduct, is a goal under Rule 37; unconditional impositions of sanctions are necessary to deter 'other parties to other lawsuits' from flouting 'other discovery orders of other district courts.'"

8

*United States Freight Co. v. Penn Cent. Transp. Co.*, 716 F.2d 954, 955 (2nd Cir.1983). "Fee shifting when the judge must rule on discovery disputes encourages their voluntary resolution and curtails the ability of litigants to use legal processes to heap detriments on adversaries (or third parties) without regard to the merits of the claims." *Rickels*, 33 F.3d at 786-87. Rule 37 is thus a particular application (and an expansion of) of Dewey's famous axiom of experience that "[l]iability is the beginning of responsibility. The individual is held accountable for what he has done in order that he may be responsive in what he is going to do. Only thus do people gradually learn by dramatic imitation to hold themselves accountable, and liability becomes a voluntary deliberate acknowledgment that deeds are our own, that their consequences from us." John Dewey, *Morals and Conduct*, in Man and Man: The Social Philosophers, 484-485 (J. Cummins and R. Linscott Ed.1954)

The General Board vigorously contends that, having already produced paper copies of the November 18 memorandum, the December 12 memorandum and all of Ms. Chapman's performance evaluations, it had no duty to also tender electronic versions of those documents. We agree. Fed. R. Civ. P. 34(b)(2)(E)(iii) provides that "a party need not produce the same electronically stored information in more than one form." Fed. R. Civ. P. 34(b)(2)(E)(iii). If, as here, the form of production is not specified by party agreement or court order, the responding party must "produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." *Id.* That is what the General Board did. Remember that Ms. Chapman's initial request for "documents" made no mention of native form or metadata and did not define documents in such a way as to require production of anything other than paper copies. Thus, the General Board's production of paper files was entirely acceptable. *See India Brewing, Inc. v. Miller Brewing Co.*, 237 F.R.D. 190, 194 (E.D. Wis. 2006) ("A party may request information in a specific electronic

9

format, but if it instead simply asks for 'documents'... production in electronic format is not required."); *D'Onofrio v. SFX Sports Group, Inc.*, 247 F.R.D. 43, 48 (D.D.C. 2008) (party failed to specifically mention metadata); *Ponca Tribe of Indians of Oklahoma v. Continental Carbon Co.*, 2006 WL 2927878, 6 (W.D. Okla. 2006) ("The original document requests issued by Plaintiffs failed to specify the manner in which electronic or computer information should be produced."). Significantly, "[a]ccording to the ABA's Digital Evidence Project Survey, paper is still the dominant form of production by which litigants receive [electronically stored information]." George L. Paul & Bruce H. Nearson, *The Discovery Revolution* 140 (2006).

Ms. Chapman's implicit contention that the General Board was obligated, unconditionally, to produce any and all relevant documents in native format and with metadata ignores and is contrary to the plain language of Rule 34. The Federal Rules Of Civil Procedure, which have the force of statutes, *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc.*, 313 F.3d 385, 392 (7th Cir. 2002), *cert. denied*, 540 U.S. 1068 (2003), are to be accorded "their plain meaning... and generally with them, as with a statute, '[w]hen we find the terms... unambiguous, judicial inquiry is complete. ...'" *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 123 (1989). Not only is the text of the Federal Rules of Civil Procedure unsupportive of Ms. Chapman's contention, the cases point to a contrary conclusion. They hold that parties who do not specifically request metadata are not typically entitled to it if the responding party has already produced the documents in another reasonably usable form. *See e.g., Autotech*, 248 F.R.D. at 559 ("It seems a little late to ask for metadata after documents responsive to a request have already been produced in both paper and electronic format."); *ICE Corp. v. Hamilton Sundstrand Corp.*, 2007 WL 4239453 (D. Kan. 2007) (request to re-produce all documents in electronic form denied because request did not specify

electronic form); *Wyeth v. Impax Laboratories, Inc.*, 248 F.R.D. 169, 171 (D. Del. 2006) ("Since the parties never agreed that electronic documents would be produced in any particular format, Wyeth complied with its discovery obligation by producing image files."). What's more, Ms. Chapman never objected to the General Board's hard-copy production, and she certainly gives no reason here as to why that form is not reasonably usable or why she did not request the electronic versions in the first place. *Covad Communications Co. v. Revonet, Inc.*, 267 F.R.D. 14, 20 (D.D.C., 2010) ("In the absence of some reason to believe that the metadata will yield an answer that the hard copy will not, production of the information in native format at this stage of the protracted struggle is not necessary."). In short, the General Board was not required to locate and produce in their native format the documents that had already been produced in hard copy. That they ultimately agreed to do so and did is the occasion not for sanctions but for some measure of commendation.

Ms. Chapman argues that the General Board's "piecemeal" production of documents – and in particular, the timing of their May 7 response – proves that the General Board had either intentionally ignored its discovery obligations until Ms. Chapman filed her Motions For Leave To Amend or that it had "refused to produce [the documents] and made false statements regarding [their] existence." (*Plaintiff's Motion For Sanctions* at ¶ 11). But neither the Motion nor the Reply Brief makes the argument convincingly that the General Board acted intentionally and only responded under the threat of an amended complaint charging spoliation.

The critical evidence to which the Motion points is the claimed coincidence between Ms. Chapman's Motion To Amend The Complaint and the General Board's production of the materials in their digital format on May 7. The Motion claims that the same day Ms. Chapman filed her Motion For Leave To File An Amended Complaint, the General Board finally produced the long-demanded

11

materials. While suspicious timing can, in the right setting, have some circumstantial probity, *Avery v. State of Ga.*, 345 U.S. 559, 564 (1953)(Frankfurter, J., concurring); *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007), it can also amount to nothing more than *post hoc ergo propter hoc*, which, as Judge Easterbrook has stressed, is the name of a logical error, not a reason to infer causation. *United States v. Thompson*, 484 F.3d 877, 879 (7th Cir. 2007). Mr. Moeller's affidavit states that he received notice of Ms. Chapman's Motion For Leave To Amend *after* he had already sent the CD by messenger to her attorney. (Moeller Aff. ¶ 14). There is no basis not to credit this testimony, and its acceptance takes away the only bit of circumstantial evidence that arguably supports the Motion's central thesis.

Mr. Moeller's rendition of what occurred is supported by the chronological evolution of the interactions between the parties' lawyers. During April and May 2010, the General Board was producing documents, and there was a steady course of communication between the parties. In fact, two days before Ms. Chapman filed her Motion For Leave To Amend The Complaint to add the spoliation count, Mr. Moeller had provided plaintiff's counsel with screen shots of the November 18 and the November 28 documents, thus announcing that in fact the materials existed. Having done so, it would be incongruous to suggest that he planned to withhold the very information whose existence he had just told plaintiff's counsel about.

Two days later, the Motion to Amend was filed, and Ms. Chapman's counsel received in digital format the information she sought – just as one would have expected in light of Mr. Moeller's May 5 transmission of the screenshots of the information to plaintiff's counsel. In short, Mr. Moeller's insistence that he sent the materials before he received the Motion To Amend is perfectly consistent with the events antedating the May 7 transmission. But under the circumstances of this

12

case, the result is the same even if the Motion arrived before the materials were sent. It bears repeating that the General Board had revealed the existence of certain of the materials in April and more were disclosed on May 5 – disclosures hopelessly inconsistent with the Motion's contention that production was only triggered by the filing of the Motion To Amend The Complaint on May 7.

Although it contends that the General Board "flagrant[ly]" violated its discovery obligations and that compliance only occurred after the Motion To Amend The Complaint was filed, the three-page Motion tellingly puts out of view the interactions between counsel for the parties between April and May 2010. And the Reply continues to insist that disclosure occurred only "after Plaintiff filed her Motion For Leave To Amend to add a claim for Spoliation of Evidence." (*Reply* at 12). This sort of "ostrich-like tactic," *Hill v. Norfolk & Western Ry. Co.*, 814 F.2d 1192, 1198 (7th Cir. 1987), is scarcely conducive to proper analysis. Of equal concern is the fact that the Motion did not cite a single case, contrary to the Seventh Circuit's frequent insistence that arguments must be supported and its warnings about the consequences of perfunctory arguments. *See e.g., Fabriko Acquisition Corporation v. Prokos*, 536 F.3d 605, 609 (7th Cir.2008); *de la Rama v. Illinois Dept. of Human Services*, 541 F.3d 681, 688 (7th Cir.2008); *United States v. Alden*, 527 F.3d 653, 664 (7th Cir.2008); *White Eagle Co-opinion Ass'n v. Conner*, 553 F.3d 467, 476 n. 6 (7th Cir. 2009); *Fabriko Acquisition Corporation v. Prokos*, 536 F.3d 605, 609 (7th Cir. 2008);*United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991).

It was not until the Reply Brief that the plaintiff made any attempt to discuss the underlying facts or to amplify on the conclusions in the Motion. One of the central arguments in the Reply – although it is difficult to follow – appears to be that the General Board's manipulation of the discovery process is evidenced by its turnover of the metadata for the November 28 memoranda on

13

April 15. From this she concludes that the defendant has lied when it says that it did not learn of those memoranda until April 28. (*Reply* at 11-12). The argument is as illogical as it is contrived. It bears repeating that the plaintiff had hard copies of the November 18, December 12 memoranda and plaintiff's performance reviews before the end of 2009. The only thing she did not have was the November 28 memoranda – because the defendant did not know of its existence. The plaintiff's reply does not pause to explain how turning over metadata believed mistakenly to relate to the November 18 memorandum proves that the General Board and its lawyers knew of the existence of the November 28 Memoranda prior to April 28 – the date Ms. Livernois represents she found these documents for the first time.[4]

Finally, since the November 28 memoranda appear to be "variations of the November 18 memorandum with few or no substantive changes," (*Defendant's Response in Opposition to Plaintiff's Motion* at 6), it is entirely plausible that the Board did not realize that it had actually located a new document never before produced (the November 28 memoranda) when it produced what it thought was metadata for the November 18 memorandum.

What we have said is enough to dispose of the Motion. But there is an additional point worthy of mention. Rule 37, by its plain terms, deals with compensating aggrieved parties who are forced to make application to a court for compliance with discovery obligations, because of failures to comply with court orders relating to discovery, or for failure to provide appropriate supplementations.

---

[4] There are several other labyrinthian arguments in the Reply. Apart from their tenuousness, they are essentially statements of counsel unsupported by any evidence, and unsupported statements are not evidence and do not count. *See IFC Credit Corp v. Aliano Brothers General Contractors, Inc.*, 437 F.3d 606, 610-611 (7th Cir. 2006); *United States ex rel. Feingold v. AdminaStar Federal, Inc.*, 324 F.3d 492, 494, 497 (7th Cir. 2003); *Alioto v. Marshall Field's & Co.*, 77 F.l3d 934, 935 (7th Cir. 1996) *Car Carriers Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). The same is true of statements at oral argument. *In re: Payne*, 431 F.3d 1055, 1060 (7th Cir. 2005) (Posner, J.).

Ms. Chapman, as she concedes, has filed no motion to compel the production of metadata or any other information, and there was no court order requiring production of such information that is claimed to have been violated. Nonetheless, it is her position that she is entitled to whatever attorney's fees were incurred in dealing with the lawyers for the General Board to get the information she concededly obtained without any court intervention.

Instead of applying for an order compelling discovery, she filed a motion to amend the complaint under Rule 15 to charge spoliation. That, she claims, quite incorrectly, triggered disclosure by the General Board. While Ms. Chapman may have thought that was an effective response to what she perceived to have been the General Board's refusal to comply with its discovery obligations, the expenses incurred in *that* effort – if that, in part, is what her Motion is seeking – are simply not compensable as a sanction under Rule 37.

The Reply Brief's position is that this Motion is not about securing compliance, but rather about "repeated roadblocks to proper discovery production... [and] falsehoods and brinksmanship [sic] cloaked in a great deal of hand wringing." (*Reply* at 2). The difficulty with this approach is that it is lacking in any analysis of Rule 37, and whether it allows a party, after successfully persuading one's opponent, to finally comply with discovery requests, to thereafter make an application to a court to impose sanctions in an amount equal to the legal expenses incurred in attempts to secure disclosure informally. Nor does the Reply cite a single case in support of its conclusion that Rule 37 provides support for the implicit theory of the Motion.

This approach to brief writing is contrary to the Seventh Circuit's repeated admonitions to bench and bar alike: "Skeletal and unsupported arguments will not be considered and the argument will be deemed waived." *White Eagle Co-opinion Ass'n v. Conner*, 553 F.3d 467, 476 n. 6 (7th Cir.

2009)(collecting cases). *See also de la Rama v. Illinois Dept. of Human Services*, 541 F.3d 681, 688 (7th Cir.2008)(argument that was "conclusory and utterly lacking in any citation to the applicable law" was deemed waived); *United States v. Hook*, 471 F.3d 766, 775 (7th Cir.2006)("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues).") (citations omitted); *Fabriko Acquisition Corporation v. Prokos*, 536 F.3d 605, 609 (7th Cir. 2008)("Nor does [movant] present any caselaw supporting its theory. It is not the job of this court to develop arguments for [parties]."); *United States v. Alden*, 527 F.3d 653, 664 (7th Cir. 2008)("Because it is not the obligation of this Court to research and construct the legal arguments available to parties, ... these arguments are waived and warrant no discussion."); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues).").

## CONCLUSION

"Discovery is the bane of modern litigation." *Rossetto v. Pabst Brewing Co., Inc.*, 217 F.3d 539, 542 (7th Cir. 2000)(Posner, J.). *See also* Frank Easterbrook, *Discovery as Abuse*, 69 B.U.L.Rev. 635 (1989). Nonetheless, lawyers have an obligation to participate fully, fairly and cooperatively in that often needlessly contentious endeavor. *Cf. Stingley v. City of Chicago*, 2009 WL 3681984, 2 (N.D.Ill. 2009)(collecting cases). Where counsel acts inappropriately and causes his opponent to incur needless costs to secure compliance with discovery obligations, Rule 37 should not receive a grudging application, and sanctions should unhesitatingly be awarded. In the instant case, however, quite apart from the fact that filing a motion to amend a complaint under Rule 15 does not trigger

Rule 37's fee shifting provisions, Ms. Chapman has not demonstrated that the General Board refused to disclose information to which she was otherwise entitled or that it unreasonably delayed providing the digital information it agreed to produce in response to an amended documents request.

Ms. Chapman's Motion For Sanctions And Attorney's Fees And Costs [61] pursuant to Rule 37 is DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 7/6/2010